UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEXAS SAMUEL BARNETT,

Plaintiff,

v.

HAROLD OBIAKOR,

Defendant.

Case No. 2:24-cv-11533
District Judge Terrence G. Berg
Magistrate Judge Anthony P. Patti

______________________________/

# REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (ECF No. 27)

**I. RECOMMENDATION**: The Court should **GRANT** Defendant's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 27).

## II. REPORT:

### A. Background

Texas Samuel Barnett (#397132) is currently located at the Michigan Department of Corrections' (MDOC's) G. Robert Cotton Correctional Facility (JCF). *See* https://mdocweb.state.mi.us/OTIS2/otis2.aspx (last visited Aug. 14, 2026); (ECF No. 37.) On June 11, 2024, while located at Macomb Correctional Facility (MRF), Barnett filed this lawsuit, *in pro per* and with unsigned pleadings,

against Harold Obiakor, M.D. regarding treatment of Barnett's right shoulder. (ECF No. 1, PageID.6, 7, 8, 15.)

Plaintiff is proceeding *in forma pauperis*. (*See* ECF Nos. 2, 5, 6, 7, 8, 10.)[1] The U.S. Marshals Service (USMS) has facilitated service upon Defendant Obiakor (*see* ECF Nos. 9, 11, 15, 18), who has appeared via counsel (ECF Nos. 21, 24) and filed an answer (ECF No. 19).

**B. Pending Motion**

Judge Berg has referred this case to me for pretrial matters (ECF No. 14). (*See also* ECF No. 13.) Currently before the Court is Defendant Obiakor's November 13, 2025 motion for summary judgment for failure to exhaust administrative remedies (ECF No. 27), which he served on Plaintiff at MRF (ECF No. 28).

The Court initially set the deadline for Plaintiff's response for December 12, 2025 (ECF No. 29) but then extended the deadline to January 21, 2026 (ECF No. 31). On February 9, 2026, at which point Plaintiff had yet to file a response, the Court entered an order, which, in part, required Plaintiff to show cause – in writing

[1] The Court's August 12, 2024 order explains how the $350.00 filing fee will be paid with withdrawals from Plaintiff's trust fund account (*see* ECF No. 8), and the process was again discussed in the Court's September 3, 2025 order (*see* ECF No. 26, PageID.321-323). In Plaintiff's April / May 2026 letter, he asks whether his "filing fee has been paid in full . . . ?" (ECF No. 37, PageID.418.) The Undersigned was informed that, as of August 14, 2026, $345.08 had been collected and $4.92 was outstanding.

on or before March 2, 2026 – why his claims against Obiakor should not be dismissed under Fed. R. Civ. P. 41(b) and E.D. Mich. LR 41.2. (ECF No. 33.)

By a letter post-marked February 17, 2026 and filed on February 20, 2026, Plaintiff submitted what may be a response to Defendant's motion, a response to the Court's show cause order, or both. (ECF No. 35.) By a letter dated May 7, 2026, Defendant "seeks clarification from the Court on whether Plaintiff has shown cause for his failure to respond and/or whether there is a deadline for Plaintiff to respond to the pending motion for summary judgment." (ECF No. 38.)

**C. Fed. R. Civ. P. 56**

Defendant Obiakor brings his present motion pursuant to Fed. R. Civ. P. 56(a). (ECF No. 27, PageID.326, 329-330.) Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

## D. Discussion

### 1. Plaintiff's factual allegations span the period from September 2023 to March 2024

This case concerns treatment for Plaintiff's shoulder pain. (*See* ECF No. 1, PageID.6-8, 15.) Plaintiff alleges that he injured his right shoulder while working in the flower bed at the MDOC's Earnest C. Brooks Correctional Facility (LRF). (*Id*., PageID.7.) The factual allegations underlying his complaint span the period from September 2023 – when he claims to have been transferred from LRF to MRF – to March 2024. (*Id*., PageID.6-8.) The complaint's approximately 80 pages of exhibits include several medical records from this period, such as:

- An October 15, 2023 clinical encounter at MRF with Shams Nazo, RN for chronic shoulder pain (*id*., PageID.19), and a seemingly related MDOC Medical Detail Special Accommodation for an ice pack (*id*., PageID.20, 69);

- An October 17, 2023 clinical encounter at MRF with Harold Obiakor, M.D. for right shoulder pain (*id*., PageID.21-23);

- An October 31, 2023 clinical encounter at MRF with Kim Farris, P.A. for, *inter alia*, right shoulder pain (*id*., PageID.24-26);

- A November 1, 2023 right shoulder x-ray, which revealed "no radiographic evidence of an acute fracture, glenohumeral dislocation or acromioclavicular separation[,]" (*id*., PageID.27-28);

- A November 10, 2023 clinical encounter at MRF with Farris, who administered an intra-articular steroid injection (*id*., PageID.30-32);

- A December 6, 2023 clinical encounter at MRF with Rebecca Bell for right shoulder pain, during which Plaintiff requested a cortisone injection and was apparently scheduled for a December 11, 2023 visit with a medical provider (*id*., PageID.33-34);

- A January 3, 2024 clinical encounter at MRF with Rachel Hermanson, R.N. for right shoulder pain (*id*., PageID.35-36);

- A January 17, 2024 clinical encounter at MRF with Danielle Magnuson, N.P. for follow up on right shoulder pain (*id*., PageID.37-39); and,

- A February 8, 2024 clinical encounter at MRF with Farris for, *inter alia*, right shoulder pain, and it seems she requested approval for a right shoulder MRI (magnetic resonance imaging) (*id*., PageID.50-53).

The complaint's attachments also include various MDOC Health Care Requests and Kite Responses dated from December 2023 to March 2024 (*id*., PageID.57-68, 75, 78-83; *see also id*., PageID.84), including Plaintiff's March 13, 2024 statement that he needed an MRI or CT (computed tomography) (*id*., PageID.81). The attachments to Plaintiff's complaint also include materials related to his January 2024, February 2024, and March 2024 requests for health record information. (*See* ECF No. 1, PageID.45-49, 54-56, 70-74, 76-77, 91-94.)

In addition to these medical records, Plaintiff attached to his pleading an April 30, 2024 letter from the Office of Legislative Corrections Ombudsman,

which reflects that Plaintiff spoke with an Ombudsman Analyst on April 24, 2024 (*see id*., PageID.17-18), *i.e.*, 48 days before this lawsuit was filed with the Court.

**2. Defendant Obiakor treated Plaintiff at MRF on October 17, 2023**

Notwithstanding the months-long time period discussed in Plaintiff's pleading (*i.e.*, September 2023 to March 2024), the allegations against sole Defendant Obiakor suggest a narrower relevant time period. Plaintiff alleges that he saw Obiakor on October 23, 2023 (*see id*., PageID.6-7), although the attachments include Obiakor's MDOC Clinical Encounter notes from October 17, 2023 (*see id*., PageID.21-23), the MRF-24-01-185-28E Step I Grievance Appeal against Obiakor lists an October 2, 2023 "Date of Incident" (*see id*., PageID.43), and the Step II Grievance Appeal lists October 17, 2023 as the "Date of Incident" (*see id*., PageID.87).

In some ways, Plaintiff's allegations perhaps suggest he is complaining about continued treatment. For example, when asked, "what date and approximate time did the events giving rise to your claim(s) occur[,]" Plaintiff alleged: "These dates occur[r]ed [September 1, 2023] until now [March 14, 2024] and will continue until it's properly treated by a real medical person[ne]l[.]" (ECF No. 1, PageID.6.) More specifically, Plaintiff alleges that Obiakor has "refused to help me with this medical issue[,]" is "medically neglecting my medical needs by his unprofessionalism[,]" and "refuses to do any more with my medical needs." (*See*

ECF No. 1, PageID.6-7.) However, if Plaintiff intended to allege that Obiakor is the Assistant Chief Medical Officer (ACMO) who denied non-party Farris's February 2024 request for an MRI as "[n]ot clinically indicated at this time based on the information provided[,]" (*id.*, PageID.17, 52), or that Obiakor would have been involved in the pain clinic's decision about which Plaintiff inquired on March 13, 2024 (*id.*, PageID.81), Plaintiff should have alleged so. Similarly, Plaintiff alleges that he has "been living with this issue over 1 [year] now and not a single nurse, [physician assistant], [nurse practitioner], or [medical doctor] will see me over the shoulder pain I've been having in here at [MRF]." (*Id.*, PageID.15.) However, as already noted, Obiakor is the sole Defendant in this case, and the specific allegations against him concern October 2023, not the year or so prior to the filing of his complaint (*i.e.*, approximately June 2023 to June 2024). The Court cannot guess at what Plaintiff intended.

In Plaintiff's February 17, 2026 filing, he adds ancillary statements that he "cannot see this doctor" due to "him taking away my meds" and because "it's a conflict between him and I since now I'm in a lawsuit with him[,]" so "it's very hard to get medications from others due to them having to go through a doctor in order to get approved." (ECF No. 35, PageID.408-409.) He also seems to make some sort of a discovery request (although prohibited by E.D. Mich. LR 26.2) for "all the healthcare findings that . . . Obiakor refused to do to help [Plaintiff] with

this [right] shoulder pain[,]" and contends his right shoulder "still hurts, burns, and [he] cannot get any medications to help prevent this numbness [he] [has] to deal with." (*Id*., PageID.409.) However, it can logically be surmised that continued treatment by Obiakor has been greatly, if not completely, reduced by Plaintiff's approximately 110-mile transfer from MRF to JCF in April 2026 (*see* ECF No. 37).

### 3. Plaintiff has failed to properly exhaust his available administrative remedies as to his claim(s) against Obiakor

Defendant's motion is based on the directive that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted[,]" 42 U.S.C. § 1997e(a). (*See* ECF No. 27, PageID.326, 329-331.)

#### a. LRF-23-11-1308-28e, although pursued through Step III, does not concern Plaintiff's claims against Obiakor

Initially, Defendant's exhaustion argument is based on LRF-23-11-1308-28e, as the sole grievance Plaintiff pursued "through Step III." (ECF No. 27, PageID.329, 332-333.) *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("proper exhaustion of administrative remedies . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the

merits).'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)).[2]

Plaintiff submitted this Step I grievance in November 2023 concerning a September 20, 2023 kite Plaintiff wrote at LRF and an October 16, 2023 letter he wrote from MRF requesting that his scissors be sent to him at MRF. (ECF No. 27-2, PageID.349.) The grievance was rejected as untimely (*see id*., PageID.350-351), Plaintiff apparently completed a Step II grievance appeal in December 2023 (*see id*., PageID.348), and he perhaps also completed a Step III grievance in January 2024 (*see id*., PageID.352). In April 2024, Plaintiff's Step III appeal was rejected for missing a Step II response (*see id*., PageID.347).

As to this grievance, Defendant Obiakor convincingly argues that LRF-23-11-1308-28e "is completely unrelated to the allegations brought in this lawsuit[,]" "does not allege wrongdoing by Obiakor[,]" and "was untimely." (ECF No. 27, PageID.332-333.)

**b. MRF-24-01-185-28E, which does concern Plaintiff's claims against Obiakor, was not properly exhausted *prior to* Plaintiff's June 11, 2024 initiation of this lawsuit.**

---

[2] Although it is unaccompanied by the usual affidavit from an MDOC records custodian, the attached MDOC Prisoner Step III Grievance Report lists LRF-23-11-1308-28e as the only Step III grievance submitted by Plaintiff. (ECF No. 27-2, PageID.346.) And Plaintiff takes no issue with its authenticity or Defendant's timeline.

Defendant next argues that the grievances attached to Plaintiff's complaint – *i.e.*, MRF-185 (*see, e.g.,* ECF No. 1, PageID.85-87) – were not grieved through Step III. (ECF No. 27, PageID.334.) By way of background, Plaintiff's allegation that the "grievance process [is] completed[,]" (ECF No. 1, PageID.11), is presumably a reference to the attached Grievance Identifier MRF-24-01-185-28E. (*Id*., PageID.43-44, 85-90.) MRF-185, which was submitted in January 2024, listed a "date of incident" of October 2, 2023 and named Obiakor. (*Id*., PageID.43.) In February 2024, the Step I grievance was rejected as untimely. (*Id*., PageID.43-44.)

Plaintiff completed a Step II grievance appeal on or about March 3, 2024, this time listing the "date of incident" as October 17, 2023. (*Id*., PageID.87, 89.) It was received at Step II on March 5 or 8, 2024. (*Id*., PageID.86-87, 89-90.) The March 18, 2024 Step II response noted that Plaintiff "did not file his grievance within 7 days of the incident." (*Id*., PageID.85.)[3]

As to MRF-185, Defendant Obiakor accurately notes that the Step I and Step II grievances were "rejected as untimely." (ECF No. 27, PageID.334.) Moreover, because only LRF-23-11-1308-28e appeared on the attached MDOC Prisoner Step III Grievance Report dated September 18, 2025 (*see* ECF No. 27-2, PageID.346),

[3] The March 18, 2023 handwritten date on the Step II grievance response appears to be a scrivener's error. (ECF No. 1, PageID.85.)

the Court has little reason to doubt Defendant's November 13, 2025 assertion – albeit several weeks after the report – that Plaintiff "did not appeal the rejections through Step III." (ECF No. 27, PageID.334.) *Kenny v. Campbell*, No. CV 23-12589, 2025 WL 2633137, at *4 n.5 (E.D. Mich. Apr. 10, 2025) (Grand, M.J.) ("Here, where Kenny did not appeal the rejection of the grievance(s) at issue, they have not been properly exhausted and, thus, the Court is not in a position to evaluate the appropriateness of the rejections."), *report and recommendation accepted and adopted*, No. 23-12589, 2025 WL 2319335 (E.D. Mich. Aug. 12, 2025) (Edmunds, J.).

Thus, even though MRF-24-01-185-28E concerns Plaintiff's claims against Obiakor, this grievance does not appear to have been properly exhausted *prior to* Plaintiff's June 11, 2024 initiation of this lawsuit. *Woodford*, 548 U.S. at 90; *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of [42 U.S.C. § 1997e(a)] makes exhaustion a precondition to filing an action in federal court . . . .") (citation omitted).

**4. Plaintiff's February 2026 filings that mention MRF-185 do not alter this conclusion.**

As noted above, Plaintiff's deadline to respond to Defendant's motion for summary judgment was extended to January 21, 2026. (ECF No. 31.) On February 9, 2026, at which point Plaintiff had yet to file a response to Defendant's

motion, the Court entered the aforementioned show cause order (*see* ECF No. 33, PageID.400), which Plaintiff followed with two filings that mention MRF-185.

**a. Plaintiff's February 9, 2026 submission (ECF No. 34)**

In a letter dated and post-marked February 9, 2026 – which undoubtedly crossed paths in the mail with the Court's same-day show cause order – Plaintiff contends he "couldn't afford to send a note asking . . . for another extension so . . . Step 3 [in MRF-24-01-185-28E] could come back . . . [,]" and he asks the Court to excuse his tardiness (presumably in responding to Defendant's motion) and allow his case to be heard (ECF No. 34, PageID.401, 404), attached to which is his Step III grievance appeal and January 16, 2026 Step III grievance response in MRF-24-01-185-28E (*id*., PageID.402-403). Indeed, this submission (which did not appear on the docket until February 13, 2026), suggests it is more likely than not that Plaintiff's June 11, 2024 complaint (*see* ECF No. 1) – *as well as* Defendant's pending November 13, 2025 exhaustion-based motion for summary judgment (*see* ECF No. 27) – were filed *before* Plaintiff completed his Step III grievance appeal form (ECF No. 34, PageID.403), which appears to have been received at Step III on December 16, 2025 (*id*., PageID.402).[4] On January 16, 2026, the rejection was upheld. (*Id*., PageID.402.)

[4] Although it was stricken from the record, Plaintiff's letter dated and post-marked December 11, 2025 (although not filed until December 16, 2025), notifies the

The Court acknowledges Plaintiff's February 9, 2026 suggestion that he filed his Step III grievance so he would "be done and all exhausted remedies would count." (ECF No. 34, PageID.401.) However, as the Sixth Circuit has explained:

> While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed. The plain language of the statute makes exhaustion *a precondition* [(emphasis added)] to filing an action in federal court ("No action shall be brought ... until such administrative remedies as are available are exhausted."). *Brown v. Toombs*, 139 F.3d 1102 (6th Cir.), *cert. denied*, 525 U.S. 833 . . . (1998). The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit. *Larkins v. Wilkinson*, 1998 WL 898870 at *2 (6th Cir. Dec. 17, 1998) (unpublished). In *Larkins*, we dismissed the plaintiff's complaint where his "attempt to exhaust his available administrative remedies only after filing suit in federal court ignores the clear mandate of § 1997e(a) which requires exhaustion ... *prior* to filing suit in federal court." (Emphasis added.) *See also Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 533 (7th Cir.1999) (case remanded with instruction to dismiss for failure to exhaust administrative remedies).

*Freeman*, 196 F.3d at 645. Here, Plaintiff's complaint was filed on June 11, 2024, Defendant filed his exhaustion-based motion for summary judgment on November 13, 2025, and Plaintiff apparently submitted his Step III grievance on or about

---

Court, *inter alia*, that "My Step III has been filed[,]" and attaches a copy of the Step III "reason for appeal." (ECF No. 30, PageID.366, 375, 390.)

December 16, 2025. Thus, MRF-24-01-185-28E was not properly exhausted *prior to* Plaintiff's June 11, 2024 initiation of this lawsuit.[5]

**b. Plaintiff's February 17, 2026 submission (ECF No. 35)**

In this filing, Plaintiff mentions a Step I grievance filed on January 24, 2024 and a Step II grievance filed on March 3, 2024. (*See id.*, PageID.406-407.) These are certainly references to Step I and Step II in MRF-24-01-185-28E (*see* ECF No. 1, PageID.43, 87); however, MRF-24-01-185-28E, as noted above, was not properly exhausted *prior to* Plaintiff's June 11, 2024 initiation of this lawsuit.

**5. The rejection of MRF-24-01-185-28E as untimely appears to have been appropriate**

Under MDOC PD 03.02.130, a Step I grievance "must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff." (ECF No. 27-1, PageID.340-341 [¶¶ W, CC]; ECF No. 27-3, PageID.357-358 [¶¶ W, CC].) Step I of MRF-24-01-185-28E was based on an October 2, 2023 incident date, Plaintiff purportedly attempted to resolve the issue on October 4, 2023, the form was completed on January 24, 2024, and it was received at Step I on January 25, 2024; thus, the rejection of this grievance as untimely appears appropriate. (ECF No. 1, PageID.43-44.) (*See also* ECF No. 27-1, PageID.338 [¶

---

[5] To the extent the Court construed Plaintiff's February 9, 2026 submission as a motion for the appointment of counsel (*see* ECF No. 34, PageID.401), this request was denied on February 26, 2026 (*see* ECF No. 36).

P(5)]; ECF No. 27-3, PageID.355 [¶ P(5)].) Even working from the Step II form's October 17, 2023 incident date (*see* ECF No. 1, PageID.87), a grievance form completed and received in January 2024 would have been untimely. A grievance appropriately rejected as untimely would not constitute *proper* exhaustion. *Woodford*, 548 U.S. at 90-91. *Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's *deadlines* and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.") (emphasis added).

**6. Was there a valid reason for the delay?**

**a. Transfer**

To be sure, MDOC PD 03.02.130 also provides: "The grievance shall not be rejected if there is a valid reason for the delay; e.g., transfer." (ECF No. 27-1, PageID.338 [¶ P(5)]; ECF No. 27-3, PageID.355 [¶ P(5)].) Transfer does not seem to have been an issue here, where Plaintiff appears to have been at MRF from October 15, 2023 to April 2024 (ECF No. 1, PageID.17-39, 50-53, 57-84) – which period includes the October 17, 2023 visit with Dr. Obiakor (*id*., PageID.21-23), the untimely January 2024 Step I grievance in MRF-24-01-185-28E (*id*., pageID.43-44), and the March 2024 Step II grievance appeal (*id*., PageID.86-87, 89). Plaintiff also appears to have been at MRF from the time he filed his complaint in June 2024 to April 2026 (*see, e.g.,* ECF No. 1, PageID.2, 96-97 [June

2024]; ECF No. 13, PageID.128 [January 2025]; ECF No. 17, PageID.149 [March 2025]; ECF No. 30, PageID.390 [December 2025]; ECF No. 35, PageID.410 [February 2026]; ECF No. 37, PageID.418 [April / May 2026]), which period includes the December 2025 receipt of his Step III grievance appeal (*see* ECF No. 34, PageID.402-403).

**b. Other valid reason(s)**

Nor does Plaintiff respond to Defendant's exhaustion-based motion by suggesting some other type of "valid reason for the delay[.]" MDOC PD 03.02.130 ¶ 5. Although Plaintiff's 5-page February 17, 2026 response – whether to Defendant's motion, the Court's show cause order, or both (*see* ECF No. 35, PageID.405-409) – mentions MRF-185, it does not provide insight into the more than three-month delay between the October 2023 incident date and the January 2024 initiation of MRF-185.

**i. October 2023 – January 2024**

For example, Plaintiff's February 17, 2026 response discusses his September 22, 2023 arrival at MRF, his October 17, 2023 visit with Defendant Obiakor, his October 31, 2023 visit with Farris, his November 1, 2023 right shoulder x-ray, his November 10, 2023 visit with Farris, and his January 17, 2024 visit with Magnuson. (ECF No. 35, PageID.405-406.) Five days later, on January 24, 2024, Plaintiff "filed [his] Step I grievance . . . against Dr. Obiakor for stating 'nothing's

wrong with it.' And after this injection from P/A K. Farris, if [there] wasn't [anything] wrong with [his] right shoulder, then why inject with a steroid." (*Id*., PageID.406.)

Put another way, this October 2023 to January 2024 timeline of his treatment does not provide a reason for his more than three-month delay between the October 2023 incident date and the January 2024 initiation of MRF-24-01-185-28E.

**ii. February 8, 2024 – March 2024**

Plaintiff's February 17, 2026 response then discusses his February 8, 2024 visit with Farris and her request for authorization for an MRI (*see* ECF No. 1, PageID.50-53), which was apparently denied by the ACMO on or about February 13, 2024 (*see id*., PageID.17), and his March 3, 2024 Step II grievance appeal (*see id*., PageID.87). (ECF No. 35, PageID.406-407.) Here, too, Plaintiff's February 17, 2026 response does not provide insight into his delay in grieving Obiakor's October 2023 actions.

**iii. October 2024**

Moreover, the timeline discussed in Plaintiff's February 17, 2026 response jumps from his March 3, 2024 Step II grievance to the alleged events of October 2024, including an October 7, 2024 MRI (*see* ECF No. 12, PageID.121-123). (ECF No. 35, PageID.407.) Yet, during this period, there was a March 18, 2024 response to Plaintiff's Step II grievance (ECF No. 1, PageID.85), Plaintiff spoke

with an Ombudsman Analyst on April 24, 2024 (*id*., PageID.17-18), and he initiated this lawsuit in June 2024. More to the point, the October 7, 2024 right shoulder MRI imaging result, which seems to have been reviewed by Farris on October 8, 2024 (*see* ECF No. 12, PageID.121-123), *post-dates* Plaintiff's June 11, 2024 complaint by nearly four months. Thus, it would not explain Plaintiff's October 2023 to January 2024 delay in *grieving* Obiakor's October 2023 actions.

**iv. Summation**

Finally, after providing the foregoing timeline in his February 17, 2026 response, Plaintiff claims Farris told him that Defendant Obiakor "doesn't care enough for [Plaintiff] to get test results, have options to determine what would cause this pain in [his] [right] shoulder as what P/A K. Farris has done." (ECF No. 35, PageID.407.) Plaintiff also contends Obiakor has taken away Plaintiff's 500mg Tylenol, which he was on for pain, and has "never referred [Plaintiff] to have a[n] x-ray, steroid injection, MRI, or ever offered [him] a medication." (*Id.*) After citing MDOC Policy Directives, such as MDOC PD 03.03.130 ("Humane Treatment and Living Conditions for Prisoners"), Plaintiff contends that Obiakor "refused to properly treat [him] due to his neglection for prisoners." (*Id.*, PageID.407-408.) Put another way, Plaintiff contends that Obiakor "has neglected [his] medical needs, refused [his] treatments[,] and . . . taken away [his] medication to see [him] living in misery and in pain." (*Id.*, PageID.408.) Plaintiff further

contends that, notwithstanding Obiakor's "neglecting ways," Farris and Magnuson got him approved for physical therapy for his shoulder pain. (*Id.*)

However, even if Plaintiff "just want[s] [his] chance to tell the courts how bad this doctor has been treating [him] . . . [,]" (*id.*, PageID.409), his response does not provide insight into the more than three-month delay between the October 2023 incident date and the January 2024 initiation of MRF-185.

### E. Conclusion

In sum, MRF-24-01-185-28E was not properly exhausted *prior to* Plaintiff's June 11, 2024 initiation of this lawsuit (*see* Section D.3.b), the rejection of MRF-24-01-185-28E as untimely appears to have been appropriate (*see* Section D.5), and there does not appear to have been a valid reason for the delay (*see* Section D.6). Accordingly, for the reasons detailed above, the Court should **GRANT** Defendant's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 27). If the Court agrees with this conclusion, then it need not address Defendant's May 7, 2026 request for "clarification from the Court on whether Plaintiff has shown cause for his failure to respond and/or whether there is a deadline for Plaintiff to respond to the pending motion for summary judgment." (ECF No. 38.)

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 20, 2026

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE